DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JAMES TRACEY LEE, | ) | C/A No. 4:07-2742-HFF-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN, EVANS CORRECTIONAL INSTITUTION, | ) ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, James Tracey Lee ("petitioner/Lee"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on August 13, 2007. Respondents filed a motion for summary judgment on January 22, 2008, along with supporting memorandum. The undersigned issued an order filed January 23, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On March 24, 2008, petitioner filed a response to respondent's motion for summary judgment.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I.  PROCEDURAL HISTORY

The procedural history as set forth by the respondent in his memorandum has not been seriously disputed by the petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by the respondent, including footnotes.

Petitioner is an inmate in the custody of the South Carolina Department of Corrections (SCDC) currently housed at the Evans Correctional Institution pursuant to orders of commitment of the Clerk of Court for Dorchester County. Petitioner was indicted at the March 1992 term of General Sessions for the Dorchester County Grand Jury for Murder (92-GS- 0158), Armed Robbery (92-GS-18-0153), and ten counts of Burglary in the First Degree (92-GS-18- 758, 762, 765,767, 769, 772, 775, 778, 783, 785). The burglary charges were unrelated to the murder and armed robbery charges.

The State sought the death penalty on the murder and armed robbery charges. Petitioner was represented by Andrew Savage, Esquire and Timothy Kulp, Esquire. Petitioner proceeded to trial on June 7, 1993. On June 10, 1993, Judge Charles Whetstone, the trial judge, declared a mistrial. Thereafter, the State and petitioner entered into plea negotiations.

Petitioner entered into a written agreement with the State in which the State agreed to forgo seeking the death penalty against petitioner in exchange for petitioner's guilty pleas and his agreement to waive any direct appeals of his guilty plea to murder and armed robbery, the sentences imposed for any offense, or any other aspect of the case. (See Attached Contractual Agreement). Petitioner also agreed never to seek and to waive any eligibility for parole and to waive any postconviction relief actions or habeas corpus actions in State or federal court. The contractual agreement was signed by petitioner, his attorneys Andrew Savage and Timothy Kulp, Solicitor Walter Bailey, and Carl Lundberg, attorney for the South Carolina Department of Probation , Parole

and Pardon Services. The State also insisted that petitioner plead guilty to the ten (10) unrelated first degree burglary charges for which petitioner was also charged. On June 10, 1993, petitioner pleaded guilty as indicted to all charges. The State fulfilled its part of the agreement forgoing the death penalty against petitioner.

Petitioner admitted to the murder and armed robbery of Bisram Hari, which occurred on November 26, 1991.[2] Petitioner brutally shot the victim in the head several times with a handgun. The victim was found with his hands bound and bullet wounds to the back of his head. Petitioner also stole an assortment of jewelry in excess of $200 from the victim. Petitioner also admitted to the ten (10) separate counts of first degree burglary that were pending against petitioner at the time of his arrest for the Hari murder.

Petitioner was sentenced by the trial judge, the Honorable Charles W. Whetstone, to life in prison without eligibility for parole until the service of thirty (30) years on the murder charge, [3]

---

[2] Petitioner's fingerprint and shoe print were found at the crime scene. Petitioner also matched the description of the subject seen leaving the crime scene. (See attached warrant charging common law murder). The victim's wife also identified jewelry that was later recovered as that taken from the crime scene and belonging to her husband, the owner of Harry's Jewelers. (See attached warrant for armed robbery). The jewelry was identified by several witnesses as being in petitioner's possession shortly after the robbery and murder. Another witness saw petitioner throw away a handgun shortly after the robbery. Petitioner also gave a statement to police that he was present during the robbery but was not the trigger man. (See attached Affidavit of Investigator Harry Long).

[3] Petitioner stipulated to the finding of the aggravating circumstance of the murder being committed during the commission of an armed robbery. (See attached Contractual Agmt. & App. p. 106). At the time of petitioner's conviction and sentence, under South Carolina law, murder required a sentence of life imprisonment. S.C.Code Ann. Section 16-23-20. Murder with a finding of a statutory aggravating circumstance required a sentence of life imprisonment without possibility of parole until the service of 30 years in prison. S.C. Code Ann. Section 16-23-20.

[4] Petitioner filed his first state PCR/habeas action over 6 years after his guilty plea and

3

twenty-five (25) years consecutive on the armed robbery charge, and ten (10) consecutive life sentences on the burglary first degree charges. All of the sentences were to run consecutively to each other. (See App. p. 113). Petitioner did not appeal from his convictions or sentences.

*The First PCR/State Habeas Action and Mandamus Action*

Petitioner filed his first post-conviction relief action (99-CP-18-923) on October 15, 1999.[4] Petitioner couched the application as a PCR application or in the alternative a state habeas action. On December 1999, petitioner filed a motion for an evidentiary hearing, orders for trial transcripts/clerk's records/trial file, and for appointment of counsel. Petitioner also filed a motion for a default judgment. On July 11, 2000, respondent made its Return to the PCR application/state habeas petition. (App. p. 28-29).

On December 19, 2000, petitioner filed a Petition for Writ of Mandamus in the South Carolina Supreme Court. The Supreme Court denied the writ by Order dated January 10, 2001 pursuant to Key v. Currie, 305 S.C. 115, 406 S.E.2d 356 (1991). Petitioner filed a Petition for Rehearing dated January 22, 2001. The Petition for Rehearing was denied by the Supreme Court by Order dated February 6, 2001. (See attached Order dated February 6, 2001).

On March 21, 2001, petitioner filed an Amended Application for Post-Conviction Relief/Alternative Petition for Habeas Corpus with Demand for a Gibson Hearing. Petitioner

---

well after both the expiration of the AEDPA statute of limitations and the state statute of limitations for filing of PCR actions. All of the procedural actions taken by petitioner described herein took place long after the expiration of the AEDPA statute of limitations and the state statute of limitations.

subsequently filed an amended application and affidavit. (App. p. 1-27). The Honorable Markley Dennis, Circuit Court Judge, denied and dismissed petitioner's action by written Order on October 29, 2001. Judge Dennis found that the matter originally came before him on June 11, 2001. Upon request by petitioner, Judge Dennis had reviewed all the pleadings filed by petitioner in this matter. From this review, it was apparent to Judge Dennis that petitioner was seeking a writ of habeas corpus. The court found it was without jurisdiction to hear such an action and the matter should therefore be dismissed. On October 29, 2001, Judge Dennis therefore dismissed the application for Writ of Habeas Corpus filed by petitioner March 21, 2001. (Attached Order of October 29, 2001). Petitioner filed a Motion to Alter or Amend Judgment pursuant to Rule 59(e) dated November 27, 2001. Judge Dennis treated the Motion as a Motion to Reconsider and denied the Motion by Order dated January 10, 2002, and filed January 17, 2002. (Order dated January 10, 2002).[5]

---

[5] Respondent asserts that "the procedural history becomes somewhat confusing at this point. Petitioner wrote Judge Dennis for clarification regarding his ruling. Judge Dennis notified petitioner that he denied his habeas petition, however he did not consider his PCR matter. (See letter of February 1, 2002). As discussed above, petitioner's appeal from the denial of his habeas claim was dismissed. Petitioner then filed his second PCR in 2002 (2002-18-1560). At the hearing on Sept. 3, 2003, the *State* asked the judge to consider the second PCR as an amendment to the first PCR action. (App. pp. 49, ln. 18-50, ln. 2). (It is not entirely clear the *State* made this request, because the following paragraph in the record is clearly collateral counsel speaking even though the record indicates the State's attorney. See App. p. 50, ll. 5-12). Apparently, this amendment was requested either because Judge Dennis never ruled on the first PCR claims or collateral counsel sought to somehow come within the state statute of limitations. Judge Goodstein did not dismiss the $2_{nd}$ PCR application as successive. However, Judge Goodstein found the previous action had been dismissed by Judge Dennis. Regardless, this has no effect on the analysis of this claim, because petitioner filed both PCRs well after the AEDPA statute of limitations ran and the state statute of limitations ran. The first PCR was not filed until 1999 and the second in 2002." Memorandum.

*Appeal from the First PCR/Habeas*

Petitioner filed an appeal from Judge Dennis' ruling, however petitioner failed to timely serve the Notice of Appeal as provided in Rule 227(b) and 203(b)1 of the South Carolina Appellate Court Rules. Petitioner did not forward a Notice of Intent to Appeal until March 19, 2002. Petitioner admitted in his filings that he had received notice of Judge Dennis final order on January 15, 2002. The Supreme Court dismissed petitioner's appeal, to review Judge Dennis ruling, by written order on March 25, 2002. (App. p. 31). It was therefore ordered by the South Carolina Supreme Court that the appeal be dismissed pursuant to Rule 221(1) of the South Carolina Appellate Court Rules. The Remittitur was filed May 16, 2002. Also on May 16, 2002, the Supreme Court denied petitioner's Motion to Reinstate his appeal. This Remittitur was also filed May 16, 2002.

*The Second PCR Action*

Petitioner filed his second PCR action (2002-CP-18-1560) on September 30, 2002. Respondent made its Return on February 21, 2003. An evidentiary hearing into the matter was convened on June 3, 2003, before the Honorable Diane Goodstein, Circuit Court Judge, at the Dorchester County Courthouse. The petitioner was present at the hearing and was represented by Andrew Grimes, Esquire. The respondent was represented by J. Hagood Hamilton, Jr., Esquire of the South Carolina Attorney General's Office. The sole issue at this evidentiary hearing was whether petitioner was advised of his right to appeal from his guilty plea and sentence and whether petitioner requested counsel to file an appeal.

The Court had the opportunity to review the record in its entirety and heard testimony at the post-conviction relief hearing. The Court further had the opportunity to observe the witnesses

presented at the hearing, pass upon their credibility and weigh their testimony accordingly. The Court made the following findings of fact and conclusions of law as required by S.C. Code Ann. Section 17-27-80 (1985).

The Court found the second PCR application should be summarily dismissed for failure to comply with the filing procedure of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. § 17-27-10, et. seq. S.C. Code Ann. § 17-27-45 requires filing of a PCR action within one-year of the entry of judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later. The PCR statute of limitations applies to all applications filed after July 1, 1995. Peloquin v. State, 321 S.C. 468, 469 S.E.2d 606 (1996). Those individuals convicted before the enactment of the statute had until July 1, 1996, to timely file their application. Petitioner was convicted in 1993. This application was filed on September 30, 2002, well after the one-year statutory filing period had expired.

In the alternative the Court found that petitioner's guilty plea was freely, voluntarily, knowing, and intelligently entered into and there was no evidence that petitioner requested counsel to file a direct appeal of his guilty plea. Moreover, the Court found the issue raised by petitioner regarding the burglary indictments could have been raised on direct appeal, and were therefore, not cognizable in under the post-conviction relief statute.

The Court found petitioner failed to file his application within the time limits established in S.C. Code Ann. § 17-27-45(a). Therefore, since the Court also found petitioner failed to present to the Court any sufficient reason to toll the statute of limitations, the Court held the application for post-conviction relief must be denied and dismissed with prejudice. The Court notified petitioner that he had thirty (30) days from the receipt of the Order to secure the appropriate appellate review.

Petitioner was pointed to South Carolina Appellate Court Rule 227 for appropriate procedures after notice has been timely filed. It was therefore ordered that the application for PCR was denied and dismissed with prejudice and petitioner was remanded to the custody of the respondent for completion of his sentences. The Order dismissing the application was issued November 16, 2003, and filed May 17, 2004. On June 17, 2004, petitioner's counsel filed a Rule 59(e) Motion to Alter or Amend the Judgment of Judge Goodstein. On July 7, 2004, Judge Goodstein issued an Order denying the Motion to Alter or Amend her Judgment Dismissing petitioner's Application for Post-Conviction Relief.

*Appeal from the Denial of the Second PCR Application*

Petitioner timely appealed from Judge Goodstein's denial of his second PCR application by way of a Johnson Petition for Writ of Certiorari to the South Carolina Supreme Court. Petitioner was represented on appeal by Robert M. Pachak of the South Carolina Office of Appellate Defense. Petitioner also filed a *pro se* "Brief in Response to Johnson Petition". The Supreme Court transferred the case to the Court of Appeals by Order dated February 15, 2006. After careful consideration of the entire record as required by Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Court of Appeals denied petitioner's petition for writ of certiorari and granted appellate counsel's request to withdraw. The Order denying the appeal was issued and filed April 19, 2007. The Remittitur was filed May 22, 2007. Petitioner filed this habeas corpus petition on August 13, 2007.

## II. HABEAS ALLEGATIONS

Petitioner raises the following allegations in his *pro se* Petition for Writ of Habeas Corpus, quoted verbatim:

**Ground One:**  Ineffective Assistance of Counsel.

Supporting Facts:  Counsel failed to file appeal of conviction, counsel failed to preserve material issue for direct review to wit: "Brady violation, double jeopardy, subject matter jurisdiction (burglary offenses deprived court of jurisdiction where the elements did not constitute the offenses indicted").

**Ground Two**:  Guilty Pleas Involuntary and Unintelligently Entered.

Supporting Facts:  Counsel failed to fully advise the elements of the crimes charged (burglary), counsel failed to fully inform petitioner of the consequences of the guilty plea, counsel failed to fully uphold the negotiated plea agreement (eligibility for parole, extensive life sentences), counsel failed to adequately advise as to any affirmative defenses to the crimes charged.

## III. SUMMARY JUDGMENT

On January 22, 2008, the respondent filed a return and memorandum of law in support of his motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir.

1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### IV.  STANDARD OF REVIEW

Since petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

11

## V.  DISCUSSION AS TO STATUTE OF LIMITATIONS

The respondent asserts that the petitioner's claims must be dismissed as untimely. Specifically, respondent asserts that the petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondent argues since petitioner's conviction became final before the enactment of the AEDPA on April 24, 1996, he had until April 24, 1997, to file his federal habeas corpus action unless the period was at any time tolled. Respondent argues the following in the supporting memorandum:

> Petitioner was convicted on June 10, 1993. He did not appeal his convictions or sentences. Petitioner pled guilty before the effective date of the AEDPA. Petitioner had one year from the effective date of the AEDPA to file his habeas action. The AEDPA became effective April 24, 1996. Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998). Petitioner had until April 24, 1997, to file his habeas action to avoid the statutory bar. Id.  Petitioner filed this habeas action well after the expiration of the AEDPA statute of limitations. In fact, this habeas action was not filed until over 10 years after the expiration of the AEDPA statute of limitations. Petitioner is barred under the AEDPA statute of limitations and is not entitled to equitable tolling even if available. Pace v. Diguglielmo, 544 U.S. 408, 125 S.Ct. 1807 (2005) (denying equitable tolling where the petitioner waited years to file his habeas action).
>
> Respondent notes that Frasch v. Peguese, 414 F.3d 518 (4th Cir. 2005) is not applicable. In Frasch, a grant of a belated direct appeal in the state of Maryland was found to have essentially "reinstated" the direct appeal process thus affecting time limits and time calculation. In the present case, Petitioner was not granted a belated direct appeal, therefore Frasch is clearly not applicable.
>
> Even if Petitioner had been granted a belated appeal, South Carolina's grant of a belated appeal is decidedly part of the post-conviction relief process and does not re-start the direct appeal process; therefore, Frasch is not controlling. See Rule 227, South Carolina Appellate Court Rules. . .

(Memorandum, document # 29).

Petitioner responded to the motion for summary judgment. (Document # 39). In his response, petitioner concedes that he is beyond the one year limitations period for habeas review but argues that the United States Supreme Court has given exception to the application of equitable tolling. Petitioner argues that he has been pursuing his rights diligently based on a review of the extensive litigation prepared by petitioner challenging his conviction and that the extraordinary circumstance which stood in petitioner's way due to the ineffective assistance of counsel for failing to file a direct appeal and the state courts failure to provide adequate review.

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[6] Subsection (d) of the statute now reads:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of–
>
> > (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[6] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

For convictions that became final before the AEDPA's effective date, the limitations period began on April 24, 1996. See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000); Brown v. Angelone, supra. The period therefore expires on April 24, 1997 (absent tolling). See Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

Petitioner's conviction became final before the AEDPA's effective date so he had until April 24, 1997, to file his habeas petition. Petitioner filed his first PCR application on October 15, 1999. Accordingly, petitioner's AEDPA period of limitations had already expired by the time he filed his first PCR Application. Additionally, the second PCR application was filed in 2002 which again was after the AEDPA period of limitations had expired. As petitioner did not file his habeas petition before the expiration of the time period of April 24, 1997, and the PCR applications were filed well after the one year period had expired, there is no evidence that this period would have been tolled and, thus, it is barred by the statute of limitations.

The undersigned concludes there is no evidence that warrants equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.

The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not

> warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Applying the law as described in Harris, any mistake or failure by counsel to file a timely direct appeal does not present an extraordinary circumstance beyond petitioner's control. Harris, 209 F.3d at 331. Likewise, it is well established that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). In the second PCR action, petitioner raised the issue of whether or not he was advised of his right to appeal from his guilty plea and sentence and whether petitioner requested counsel to file an appeal. After an evidentiary hearing on this issue, the PCR court found that the PCR application should be dismissed for failing to comply with the Uniform Post-Conviction Procedure Act requiring that the PCR action be filed within one year of the entry of judgment of conviction and that petitioner failed to present any sufficient reason to toll the statute of limitations. Alternatively, the PCR court found that there was no evidence that petitioner requested counsel to file a direct appeal of his guilty plea.[7] Accordingly, petitioner has not alleged facts indicating that he is entitled to equitable tolling. Even assuming *arguendo* that petitioner was not advised of his right of direct appeal, he has failed in his burden of establishing that his attorney's inaction was beyond his control or that it was impossible to file here timely, both of which are needed to allow equitable tolling. *See* Tudor v. Rushton, 2007 WL 4856866 (D.S.C. January 30, 2007). Further, based on the fact that petitioner pleaded guilty on June 10, 1993, and petitioner did not file his first PCR application until October 15, 1999, there is no evidence that petitioner exercised due diligence in pursuing an appeal or filing his PCR

---

[7] Also, there is no indication in the record that his attorney represented to petitioner that he would pursue an appeal on his behalf.

16

applications. Under long-established principles, petitioner's lack of due diligence precludes equity's operation. *See*, Irwin, supra. "Equity should not be exercised to save an individual from his own failure to act or be based upon excuses which are little more than attempts to shift blame for the failure to act, rather than to explain an unfairness to external to the individual's acts." Tudor, supra. Based on the fact that petitioner has not shown any extraordinary circumstances to warrant equitable tolling, the undersigned finds that the petition is barred by the statute of limitations. Therefore, the undersigned finds that the respondent's motion for summary judgment should be granted as the petitioner's habeas corpus petition is barred by the statute of limitations.

## VI.  CONCLUSION

As set out above, a review of the record indicates that the petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that respondent's motion for summary judgment (document #28) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 13, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**